IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN BOND | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 10-6739 |
| CITY OF BETHLEHEM | : | |

**MEMORANDUM AND ORDER**

Plaintiff in this case, Brian Bond, alleges that he was terminated from his position in Defendant City of Bethlehem's Department of Parks and Public Property after Defendant discriminated against him based on his gender, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. ANN. §§ 951-963 ("PHRA").[1] Plaintiff further alleges that he was terminated without procedural due process, in violation of 42 U.S.C. § 1983.

Presently before the Court are Defendant City of Bethlehem's ("City") Motion for Summary Judgment (Doc. 14), Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Doc. 18); City of Bethlehem's Reply Brief in Support of Its Motion for Summary Judgment (Doc. 20), and Supplemental Affidavit of Plaintiff Relative to New Evidence in the Case (Doc. 21). Oral argument was held on October 7, 2011. The Court finds that there are no material facts in dispute and that the City is entitled to judgement as a matter of law. Therefore, the Court will grant the City's motion for summary judgment.

---

[1] The Court notes that Count III of the Amended Complaint (Doc. 12) alleges discrimination on the basis of "age and national origin." (Am. Compl. ¶ 60.) However, because there are no allegations in the Amended Complaint that state Mr. Bond's age or national origin, and because Mr. Bond has consistently alleged facts and made argument only as to discrimination based on gender, the Court will treat Count III as a claim for discrimination based on gender under the PHRA.

I.      FACTUAL BACKGROUND

The following facts are undisputed. In October 1996, Mr. Bond began his employment in the Parks and Public Property Department of the City of Bethlehem. (Am. Comp. ¶ 3-5.) Mr. Bond subsequently began a personal relationship with another City of Bethlehem employee, Ms. Gina Bullard. (Id. at ¶ 7.) The relationship ended in August 2008. (Id. at ¶ 8.) Shortly thereafter Mr. Bond was served with a Protection from Abuse Order ("PFA") filed by Ms. Bullard in Carbon County, Pennsylvania. (Id. at ¶ 9.) Ms. Bullard reported that Mr. Bond had violated the PFA on at least three occasions during the PFA's pendency. (Am. Comp. ¶ 10; Def. Statement of Undisputed Facts ¶ 15.) The Carbon County PFA expired on April 17, 2009. (Hr'g Tr. 2, Oct. 7, 2011.)

On May 13, 2009, Ms. Bullard advised the City's Human Resources department that she was receiving cell phone text messages from Mr. Bond that she considered to be harassing. The text messages read as follows:

> ***     See you on ur lunch walk. Whenever, Lyama.
>         610 442-9316  8:21 am 5/13/09
>
> ***     Can't face the music? I guess you really do want me 2 hate you.
>         Your wish is my command. Enjoy!
>         610 442-9316  9:49 am 5/13/09
>
> ***     You tried to ruin me with a PFA, because you are a whore! Ive given
>         you way 2 many chances. Now its my turn!!!
>         610 442-9316 10:09 am 5/13/09
>
> ***     Yo whore! So whos the little cunt, last night, that said I should have
>         been killed in my car accident? She needs a bitch slap 2! Have her
>         get in back of the line.
>         610 442-9316 12:18 pm 5/13/09

(Def. Facts ¶ 7; Pl. Resp. to Def. Facts ¶ 7.)  Mr. Bond was working at the time these messages were sent.  (Hr'g Tr. 2-3.)  The City opened an investigation into the matter. (Def. Facts ¶ 6;  Pl. Resp. to Def. Facts ¶ 6.)

Ms. Bullard filed a police report with the Bethlehem Police, and on May 14, 2009 criminal charges were brought against Mr. Bond as a result of the incident.  (Hr'g Tr. 3.)  Another PFA was issued against Mr. Bond in Northhampton County, Pennsylvania, effective May 14, 2009.  (Def. Facts ¶ 28; Ex. Supp. of Def. Mot. Summ. J. 2 at 26-30; Pl. Resp. to Def. Facts ¶ 28.)

On May 15, 2009, Mr. Bond was suspended from work and directed not to come to City Hall.  (Def. Facts ¶ 34; Pl. Resp. to Def. Facts ¶ 34.)  On May 18, 2009, the City issued a letter to Mr. Bond which stated that he would remain on suspension during the pendency of the investigation of a potential violation of City policies.  (Ex. Supp. of Def. Mot. Summ. J. 5 at 56-57; Hr'g Tr. 4-6.)  The letter indicated that, "[i]n accordance with the City's Disciplinary Policy and Procedure for Non-Uniformed Personnel," Mr. Bond could be subject to disciplinary action "ranging from a formal reprimand to dismissal."  (Ex. Supp. of Def. Mot. Summ. J. 5 at 56.)

A <u>Loudermill</u> hearing was held on May 21, 2009.  (Hr'g Tr. 6.)  Present at the meeting were Mr. Bond, William Tone, president of Mr. Bond's union, Jean Zweifel, director of Human Resources, Tom Wilchak, superintendent of the Bethlehem Golf Course, Dennis Reichard, business administrator, and Assistant City Solicitor Joseph F. Kelly.  (Def. Facts ¶ 41; Pl. Resp. to Def. Facts ¶ 41.)  During the hearing, Mr. Bond admitted that he had sent the text messages at issue to Ms. Bullard.  (Def. Facts ¶ 45; Pl. Resp. to Def. Facts ¶ 45.)  Mr. Bond was informed that he would remain on suspension, with pay, during the pendency of the City's investigation,

and that a decision on his discipline would come as soon as practicable.  (Def. Facts ¶¶ 42, 50; Pl. Resp. to Def. Facts ¶¶ 42, 50.)

On June 2, 2009, City offered Mr. Bond a Last Chance agreement.  (Def. Facts ¶ 53; Pl. Resp. to Def. Facts ¶ 53.)   The Last Chance agreement provided that Mr. Bond could keep his employment with the City under certain conditions, including a 20-day suspension without pay, mandatory counseling, and drug testing.  The Last Chance agreement also provided that, if Mr. Bond was convicted of a crime in connection with the May 13, 2009 incident, he would be terminated.  (Def. Facts ¶ 54; Pl. Resp. to Def. Facts ¶ 54.)  Mr. Bond refused to sign the Last Chance agreement.  (Def. Facts ¶ 58; Pl. Resp. to Def. Facts ¶ 58; Hr'g Tr. 6-7.)   On June 4, 2009, Mr. Bond was terminated.  (Def. Facts ¶ 59; Pl. Resp. to Def. Facts ¶ 59; Hr'g Tr. 7.)

On November 25, 2009, Mr. Bond pled guilty to the charge of harassment stemming from the May 13, 2009 incident.  As part of the guilty plea, Mr. Bond admitted that he sent the harassing text messages to Ms. Bullard, and that the messages were "designed to annoy and alarm and frighten her."  (Def. Facts ¶¶ 60; Pl. Resp. to Def. Facts ¶¶ 60; Hr'g Tr. 7-8.)

## II.     PARTIES' CONTENTIONS

Mr. Bond contends that his termination was an act of reverse discrimination by the City.  He alleges that, had he been female, he would not have been terminated.  He further alleges that he was terminated without procedural due process, in violation of 42 U.S.C. § 1983.  The City contends that Mr. Bond's termination was for violation of three City policies:  the policy prohibiting sexual harassment, the Code of Conduct for employees, and the Violence in the Workplace policy.  The City argues that prior to terminating Mr. Bond, it held a Loudermill hearing and offered him a Last Chance agreement, which he rejected.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Levy v. Sterling Holding Co., 544 F.3d 493, 501 (3d Cir. 2008). Only a factual dispute that is both genuine and material will defeat a motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986). A factual dispute is "genuine" if the evidence is such that a reasonable jury could possibly return a verdict for the non-movant. Id. at 248. A dispute is "material" if it would affect the outcome of the case under governing substantive law. Id.

The moving party bears the initial burden to demonstrate that there are no facts on record that support the non-moving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party carries this burden, the non-moving party must then present specific facts showing the existence of a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. The non-moving party cannot rest upon the mere allegations or denials of its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985).

At the summary judgment stage, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-movant. See Matsushita, 475 U.S. at 587; Horsehead Indus., Inc. v. Paramount Communications, Inc., 258 F.3d 132, 140 (3d Cir. 2001). "This standard is applied with added rigor in employment discrimination cases, where intent and

credibility are crucial questions." Stewart v. Rutgers, The State Univ., 120 F.3d 426, 431 (3d Cir. 1997) (quoting Robinson v. PPG Indus. Inc., 23 F.3d 1159, 1162 (7th Cir. 1994)).

IV.     DISCUSSION

    A.     **Gender Discrimination Claim**

Mr. Bond alleges that because of his gender, the City discriminated against him in violation of Title VII and the PHRA.  The analysis under both statutes is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably.  See Weston v. Pennsylvania, 251 F.3d 420, 426 n.3 (3d Cir. 2001).  Claims of discrimination are subject to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973) ("McDonnell Douglas").  Under McDonnell Douglas, the plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence.  To establish a prima facie case, the plaintiff must prove that (1) he is a member of a protected minority; (2) he was qualified for the position in question; (3) despite his qualifications, he suffered an adverse employment action; (4) the circumstances give rise to an inference of unlawful discrimination.  See, e.g., Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410-11 (3d Cir. 1999).  When a plaintiff alleges reverse discrimination, the first prong of this test must be adapted.  The Third Circuit has held that, in lieu of requiring a plaintiff to show he belongs to a protected group, "all that should be required to establish a prima facie case in the context of 'reverse discrimination' is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." Iadimarco v. Runyon, 190 F.3d 151, 161 (3d Cir. 1999).

6

If the plaintiff meets its burden of stating a prima facie case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. McDonnell Douglass Corp., 411 U.S. at 802. "Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Jones, 198 F.3d at 410.

1. *The Plaintiff Failed to Establish a Prima Facie Case*

Mr. Bond has failed to establish a prima face case of gender discrimination. He has not demonstrated that he was treated less favorably than other City personnel because he was male. See Campetti v. Career Educ. Corp., No. 02-1349, 2003 U.S. Dist. LEXIS 12202, at *23 (E.D. Pa. June 26, 2003) ("A plaintiff may satisfy the fourth prong of the prima facie case by presenting evidence that similarly situated individuals were treated more favorably."). Mr. Bond failed to offer any evidence that similarly situated female employees, i.e., female employees who violated the City's violence in the workplace and sexual harassment policies, were not subject to adverse employment action. Rather, Mr. Bond's only argument in support of his reverse discrimination claim is that he was terminated by the City while Ms. Bullard, a female employee and the object of Mr. Bond's admitted harassment, was not. (Pl. Mem. of Law in Opp. to Sum. J. 7.) In support of this argument, Mr. Bond alleges that Ms. Bullard violated City policy when she "used the [City's] fax machine, time, and equipment" to research and file four Indirect Criminal Contempts against Mr. Bond for violations of the Carbon County PFA. (Am. Compl. ¶¶ 10-11.)

This fact is insufficient to sustain Mr. Bond's burden, because, even if true, it is not evidence of a similarly situated person being treated more favorably. "Similarly situated

employees are ones who have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Campetti, 2003 U.S. Dist. LEXIS 12202, at *24 (internal quotations and citations omitted). See also Flagg v. Control Data, 806 F. Supp. 1218, 1223 (E.D. Pa. 1992) (holding the plaintiff, a black male field technician, failed to establish a prima facie case because he failed to show "that a white male field technician had his driver's license suspended and was not terminated"). Mr. Bond was the subject of multiple PFAs. He admitted to sending Ms. Bullard text messages "designed to annoy and alarm and frighten her" during work hours at his job with the City. He was criminally charged with and pled guilty to harassment. As the City correctly states, "[w]hat Bullard did was not serious and was not a crime. What Bond did was both." (Def. Mem. in Supp. of Mot. for Summ. J. 9.) Here, Ms. Bullard simply did not "engage[] in the same conduct" as Mr. Bond, and is not a similarly situated employee.[2] Thus, Mr. Bond has failed to make out a prima facie case of discrimination, and summary judgment must be granted.

---

[2] Although not alleged in his Complaint, nor argued in his Memorandum of Law in Opposition to Summary Judgment, Mr. Bond appears to suggest in his affidavit and counter-statement of undisputed facts that Ms. Bullard was, directly or indirectly, engaged in harassment against him. (See, e.g., Bond Aff. ¶¶ 5-8, 14-15, 25.) However, Mr. Bond has not pointed to any admissible evidence in the record supporting his allegations, nor has he suggested that the City was made aware of the alleged harassment by Ms. Bullard. Therefore, Mr. Bond cannot avoid summary judgment based on these unsupported allegations. See Jones, 198 F.3d at 414 (affirming summary judgment under rationale that plaintiff made numerous unsupported allegations in his affidavit).

2.  *The Defendant Articulated Legitimate, Non-Discriminatory Reasons for its Adverse Employment Action*

After the prima facie stage, the burden shifts to the employer to offer some legitimate, non-discriminatory reason for its adverse employment action. This burden is not onerous. "The employer need not prove that the tendered reason *actually* motived its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (emphasis in original). Here, even if Mr. Bond had established a prima facie case, the City has presented sufficient evidence to meet its burden.

The City cites Mr. Bond's violation of three policies as the reason for Mr. Bond's ultimate termination: the policy prohibiting sexual harassment, the Code of Conduct for employees, and the Violence in the Workplace policy. The City's sexual harassment policy prohibits excessively offensive remarks and inappropriate use of sexually explicit or offensive language. (Ex. Supp. of Def. Mot. Summ. J. 3 at 31-32.) It provides that an employee who violates the policy is subject to discipline, up to and including termination. (Id.) The City's Code of Ethics (Resolution No. 11471) states that employees will strive to "[m]aintain a course of conduct at all times which will bring credit to myself and the City of Bethlehem" and "[r]espect the rights of other Officials and Employees of the City." (Id. at 35.) Finally, the City's Violence in the Workplace policy provides:

> The City of Bethlehem realizes the importance and need for all employees to come to work in an environment that is secure. In order to accomplish this, behaviors such as direct threats, threatening behavior, harassing by phone, e-mail or personal interaction will not be tolerated. Violation of this policy may lead to disciplinary action, demotion, reassignment, suspension, dismissal, arrest, or prosecution.

(Id. at 36.)

Here, during the City's investigation, Mr. Bond admitted to sending text messages to Bullard that contained offensive language and that were "designed to annoy and alarm and frighten her." He later pled guilty to a criminal charge of harassment stemming from the same text messages. Thus, under the City's policies, the City had a legitimate, non-discriminatory reason to terminate Mr. Bond. Notably, however, despite having just cause to dismiss him, the City did *not* terminate Mr. Bond outright as a result of this incident. Rather, due to Mr. Bond's lengthy work history with the City, during which there were no significant disciplinary problems, the City offered Mr. Bond the Last Change agreement. Mr. Bond refused the agreement, which resulted in his termination.

Accordingly, the City has presented sufficient evidence to articulate a legitimate, non-discriminatory reason for terminating Mr. Bond.

    3. *The Plaintiff Failed to Show the Defendants' Reasons were a Pretext for Discrimination*

"[T]o avoid summary judgment, the plaintiff's evidence rebutting an employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." Fuentes, 32 F.3d at 764 (internal citations and quotations omitted) (emphasis in original). Thus, because the City tendered sufficient justification for its action, Mr. Bond must present evidence sufficient to lead a reasonable fact-finder to either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason

was more likely than not a motivating or determinative cause of the employer's action." Id. Under the first prong, a plaintiff "must demonstrate such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence." Id. at 765 (internal citations and quotations omitted) (emphasis in original).  Under the second prong, "a male plaintiff can establish that his sex was a motivating or determinative factor in his termination by demonstrating past discriminatory treatment, more favorable treatment of similarly situated females, or discrimination against other males." Hawthorne v. Mercer County Children and Youth Services, No. 05-1635, 2007 U.S. Dist. LEXIS 57150, at *31-32 (W.D. Pa. Aug. 6, 2007).

      Under this standard, the Court finds that even if Mr. Bond had established a prima facie case, he has failed to offer sufficient evidence from which a reasonable fact-finder could find that the City's proffered reasons were merely a discriminatory pretext.  With respect to the first prong, Mr. Bond offers no evidence that would lead a reasonable fact-finder to disbelieve the City's articulated legitimate reasons for the employment action.  With respect to the second prong, in his brief opposition to the instant motion, Mr. Bond argues only that he and Ms. Bullard "were subjected to two completely different standards of discipline.  Ms. Bullard kept her job while the Plaintiff was terminated." (Pl. Mem. of Law in Opp. to Sum. J. 7.)  However, as discussed above, this is insufficient to sustain Mr. Bond's burden, because Ms. Bullard's conduct is not sufficiently similar to Mr. Bond's conduct so as to constitute evidence of a similarly situated female being treated more favorably.

In sum, Mr. Bond has failed to make out a prima facie case of discrimination and has failed to show that the City's legitimate, non-discriminatory reasons for his termination were a pretext for discrimination. Thus, the City's motion for summary judgment on the Mr. Bond's gender discrimination claims under Title VII and the PHRA must be granted.

### B. Due Process Claim

Mr. Bond also alleges that he was terminated without procedural due process, in violation of 42 U.S.C. § 1983 ("Section 1983"). To establish a claim under Section 1983 for deprivation of procedural due process rights, a plaintiff must prove that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (internal quotation omitted). In this case, the City does not contest that Mr. Bond has a legitimate property interest in his continued employment. Therefore, this Court will analyze the second prong of the test, whether the City failed to provide procedures consistent with due process.

The essential principle of procedural due process is that a deprivation of life, liberty or property should be preceded by "notice and opportunity for a hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S. Ct. 1487 (1985) ("Loudermill"). A public employee with a legitimate interest in continued employment is entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before his employment is terminated. Id. at 546. A pre-termination hearing operates as an "initial check against mistaken decisions." Id. at 545. Such a hearing is "essentially, a determination of whether there are

reasonable grounds to believe that the charges against the employee are true and support the proposed action." Id. at 545-46.  Therefore, a pre-termination hearing can be "something less than a full evidentiary hearing" and "need not be elaborate.'" Id. at 545 (internal quotations omitted).

Here, Mr. Bond was suspended, with pay, on May 15, 2009.  See Loudermill, 470 U.S. at 544-45 (holding, "in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay").  The City's May 18, 2009 letter memorializing the suspension notified Mr. Bond that the City was investigating his conduct, and that the investigation could result in disciplinary action ranging from a formal reprimand to dismissal.  Mr. Bond, together with his union representative, attended a hearing on May 21, 2009, was apprised of the allegations and evidence of harassment, and was given the opportunity to present his side of the story.  During the hearing, Mr. Bond admitted that he had sent the harassing text messages.  He was then informed that a decision on his discipline would be made as soon as practicable.  On June 2, 2009, the City offered Mr. Bond the Last Chance agreement, which he rejected.  Mr. Bond was terminated on June 4, 2009.  These procedures constituted the notice and opportunity to respond that is required under Loundermill.

Mr. Bond has conceded that the May 21, 2009 hearing was a Loudermill hearing.  However, he argues that May 21, 2009 hearing was a *suspension* hearing, and that the City was required to give him a second *pre-termination* hearing that specifically addressed the issue of his termination prior to being terminated on June 4, 2009.  This Court disagrees.

Under Loudermill, the "root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property

interest." 470 U.S. at 542 (emphasis in original).  Mr. Bond was put on notice that termination was a possible result of the City's investigation in the City's May 18, 2009 letter, and was given a *pre-deprivation* hearing on May 21, 2009.  At that hearing, Mr. Bond, accompanied by his union representative, was apprised of the allegations against him and was given an opportunity to respond.  Moreover, the suspension and termination flow from the same set of events.  Mr. Bond does not argue that he would have presented further explanation at a second pre-termination hearing.  Nor is there any indication that the City based its ultimate disciplinary decision on evidence gathered after the May 21, 2009 hearing.  Thus, a second Loudermill hearing between May 21, 2009 and Mr. Bond's termination on June 4, 2009 would have been unnecessary because Mr. Bond was already aware of the charge, his employer's evidence, and had taken advantage of his opportunity to respond.  A second hearing was not constitutionally required.  See Koltonuk v. Borough of Laureldale, 443 F. Supp. 2d 685, 694-95 (E.D. Pa. 2006) (holding a second Loudermill hearing was unnecessary where termination was based on a single event and plaintiff had notice and an opportunity to answer charges as to that event).  Moreover, the Court again notes that Mr. Bond was *not* terminated after this hearing – he was given the Last Chance agreement, under which he could comply with certain conditions to ensure a safe work environment and avoid termination.  He refused.

   In sum, even if the Court were to assume that this was a termination by the City rather than an offer to continue employment under what the City saw as necessary conditions, Mr. Bond was still afforded the pre-termination hearing required by Loudermill.  He was given the constitutionally-required notice and opportunity to respond to the allegations that he sent harassing text messages to another City employee during work hours.  Thus, the City's motion

for summary judgment on the Mr. Bond's Section 1983 procedural due process claim must be granted.

## V.     CONCLUSION

Having found that no reasonable fact-finder could conclude that (1) Mr. Bond was terminated due to his gender; or (2) Mr. Bond was denied due process of law prior to his termination, this Court must grant the City's motion for summary judgment.

An appropriate order follows.